THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ÁNGEL SANTIAGO BATISTA ET AL.; Defendants and Appellants.

No. CR-62-207.   Decided June 10, 1963.

*Luis Raúl Cruz Jiménez* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM: The appellants were convicted by a jury of four burglaries in the first degree committed in four small

commercial establishments in the rural zone of Barceloneta, during the nights of March 1, 10, 15 and 22, 1961. At the beginning of the trial the defense offered to stipulate that really the four burglaries aforementioned were committed because, he said, the defense was headed in another direction. As at first the accused, when questioned by the judge, said they did not approve said stipulation, but after conferring with their counsel they said they did. In view of the doubt, the judge did not admit the stipulation. The evidence was introduced with the results stated above.

The two errors assigned by appellants are (1) that the court erred in deciding that the witness that connected the accused with the commission of the offenses was not an accomplice and (2) that he abused his discretion in imposing excessive sentences.

The burglaries were committed as follows: Appellants operated in an automobile brought by Ángel Santiago, one of them. In the daytime they surveyed the place that they were going to break into. They returned late at night or at dawn after the establishments were closed. They brought with them the witness Bienvenida Nieves (on this point we elaborate hereafter). They parked the car close to the place chosen that night. They forced Bienvenida to get out of the car and instructed her to whistle if people should come by. Other times she was instructed to cough. They took the tools out from the car, generally a "claw bar" used to open merchandise cases or to destroy wooden structures. With the claw bar they forced a door and entered. They carried away the proceeds of the theft in, the car. Then they divided the money and merchandise stolen between both of them. Bienvenida did not participate in the loot.

The evidence shows that Bienvenida's participation in the operation was forced by terror. For several months she was living in concubinage with Bonifacio Pabón López, the other appellant. Bonifacio did not work; during the daytime

he gambled in prohibited games and at night he went on these excursions. He beat her and one time he beat her mother. Bienvenida had gone away several times with her young child to her mother's house, but he went after her, threatened her with a knife, and brought her back to his home.

She testified that Bonifacio had a knife with which he threatened her frequently. She tells how, threatening "to cut her into pieces" with the knife, he forced her, against her will, to submit herself to have sexual relations against nature with him. (T.E. pp. 47–48.) She explained that she did not want to go on the excursions, but he forced her under threats. We copy from the record:

> "Then I said I was not going. Then he said 'You have to go there.' Then I said I could not leave my child alone; that I did not want to go, and he pushed me into the car with a pocketknife opened." (T.E. p. 28.)

Also, under coercion, she waited near the car while they committed the burglaries. (For the purposes of reading the record have in mind that "Chalemán" is Bonifacio Pabón and "El Cano" is Ángel Santiago, also known as "Añe" and "Ángel Ferrer".)

> "Q. When you came to that place, what happened there?
>
> "A. What happened there, they got out of the car; then Chalemán told me to get out of the car; then I said no, I did not know what they were going to do; then Chalemán put his hand into his pocket and took out a knife; then he said get out and, for fear, I got out. Then he said: 'You must stay by the car'. Then El Cano took a small claw bar from the car. Then he said, 'If anyone comes by, you whistle and don't say that we are here, and if you don't do that we are going to cut you into pieces' ". (T.E. pp. 30–31.)

The witness was asked why she did not cry out. She explained that that was a lonely place, nobody was around, and that if there were people around or a policeman she would have called out. (T.E. p. 44.)

It is not necessary to point out more details of the evidence. For other examples of coercion of which the witness was a victim, see pages 35, 41, and 45 of the transcript of evidence.[1]

■ The first error assigned was not committed. The witness Bienvenida Nieves was not an accomplice in the burglaries committed. Her presence in the places of the acts and her passive participations therein were not voluntary, but due to coercion and a reasonable fear of receiving grave corporal damages. An accomplice is one who wilfully and knowingly, voluntarily and with intent, joins in the commission of a crime. *People* v. *Montalvo,* 83 P.R.R. 700–703 (1961); *People* v. *Rosado,* 72 P.R.R. 773, 776 (1951).

After discussing the first error assigned, the appellants assign what they call three "miscellaneous errors". They are three minor incidents, which, after examining them, we are convinced have no merit and in any event if they did, they would not warrant our setting aside the judgment appealed from.

■ The penalties imposed on appellants were the following: 7 to 15 years imprisonment at hard labor without costs for the first charge; equal penalty for the second charge; and equal penalties for the third and fourth charges, which should run concurrently with the second. Although these penalties are within the limits fixed by law for that offense, § 410 of the Penal Code, 33 L.P.R.A. § 1593, and therefore the sentence is legal and valid, we believe that the purposes of law are achieved by modifying the judgment so that the penalties of 7 to 15 years of imprisonment at hard labor imposed on each of the appellants in each of the charges should run concurrently.

---

[1] Among people of those circumstances those threats are not mere words. Remember the prosecutrix in *People* v. *Ramos, ante,* p. 373, who, on a Sunday morning expressed fear of being killed, and by midday she was practically cut into pieces and dead.

As thus modified, the judgment of the Superior Court, Arecibo Part, rendered in the case at bar on November 24, 1961, will be affirmed.